# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1987
_____

United States of America

*Plaintiff - Appellee*

v.

DeShaun Anthony Bullock, Jr.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern
_____

Submitted: April 14, 2022
Filed: May 31, 2022
_____

Before COLLOTON, MELLOY, and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

DeShaun Bullock pleaded guilty to possession of a firearm by an unlawful drug user. *See* 18 U.S.C. § 922(g)(3). Bullock appeals the district court's[1] application of a sentencing enhancement for "possessi[ng] any firearm . . . in

_____

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

connection with another felony offense," U.S.S.G. § 2K2.1(b)(6)(B), and its decision to depart upward based on conduct of which Bullock was acquitted, *see* U.S.S.G § 4A1.3. We affirm.

## I.

On March 15, 2019, police officers observed activity involving Bullock that they believed was consistent with an illegal drug transaction in a parking lot. The officers observed a car pull up next to Bullock's car and an unidentified individual exit the back seat of the first car, walk to the driver's side window of Bullock's car, and then quickly return to the first car. The officers watched Bullock leave the parking lot and then pulled him over for committing a traffic infraction. Bullock was the only person in the car. He handed the officers his driver's license and permit to carry weapons. One of the officers asked whether Bullock had a gun, and Bullock reached over to the passenger-side floorboard, picked up his gun, and placed it on the dashboard. The officers searched Bullock's car and found two baggies of marijuana weighing a combined 4.3 grams, one in the center console and one in the pocket of a coat laying on the back seat.

Bullock pleaded guilty to possession of a firearm by an unlawful drug user. *See* § 922(g)(3). The presentence investigation report recommended applying a sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for "use[] or possess[ion of] any firearm or ammunition in connection with another felony offense." The "[]other felony offense" here is possession of a controlled substance, marijuana, third violation, under Iowa law. *See* Iowa Code § 124.401(5). Bullock objected to the application of the § 2K2.1(b)(6)(B) enhancement. Additionally, the Government moved for an upward departure under U.S.S.G § 4A1.3 or, alternatively, an upward variance, based on the underrepresentation in Bullock's criminal-history category of the seriousness of his criminal history, relying on a 2017 charge for reckless use of a firearm resulting in serious injury of which Bullock was acquitted in state court. Bullock objected to the upward departure.

At sentencing, the district court applied the § 2K2.1(b)(6)(B) enhancement and departed upward under § 4A1.3 from the sentencing guidelines range of 46 to 57 months' imprisonment. The district court sentenced Bullock to 63 months' imprisonment. Bullock appeals, challenging the § 2K2.1(b)(6)(B) enhancement, the upward departure, and the substantive reasonableness of his sentence.

## II.

We begin with Bullock's challenge to the application of the § 2K2.1(b)(6)(B) enhancement. We review for clear error. *United States v. Mitchell*, 963 F.3d 729, 731 (8th Cir. 2020).

The § 2K2.1(b)(6)(B) enhancement applies "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense." Under application note 14(A), the enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense," such as drug possession. *See United States v. Smith*, 535 F.3d 883, 885 (8th Cir. 2008).

"To facilitate the crime of drug possession, the defendant must possess the gun with the purpose or effect of facilitating the drug possession, and the connection cannot be just spatial or coincidental." *United States v. Swanson*, 610 F.3d 1005, 1008 (8th Cir. 2010). "This standard may be met when a defendant concurrently possesses drugs and a firearm while in public, like in a car," *id.*, because "when a drug user chooses to carry his illegal drugs out into public with a firearm, there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the offender." *Smith*, 535 F.3d at 886. "The inference that a firearm is for protection of drugs is allowable when the amount of drugs is more than residue." *Swanson*, 610 F.3d at 1008. Accordingly, we have affirmed the application of § 2K2.1(b)(6)(B) when a defendant's "gun and [drugs] were both within his immediate reach" while the defendant was in his car. *Swanson*, 610 F.3d at 1006, 1008.

Bullock argues that the district court clearly erred in finding that the gun facilitated the marijuana possession given the small amount of marijuana he possessed, the widespread availability of marijuana, and the fact that the gun would not have been visible to a drug seller because it was on the passenger-side floorboard.

We conclude that the district court did not clearly err in finding that Bullock's gun facilitated his drug possession. Bullock possessed the gun in public—on a public road in his car—and both the gun and at least some of the drugs were easily accessible; the gun was on the passenger-side floorboard and a baggie of marijuana was found in the center console. *See Swanson*, 610 F.3d at 1008. True, the gun might not have been visible to a drug seller, but Bullock would have been able to access the gun if he needed it. And Bullock was "seen involved in activity . . . that appeared to be consistent with an illegal drug transaction." *See id*. Although Bullock argues that marijuana possession is not dangerous because marijuana is widely available, given the evidence that Bullock was involved in an illegal drug transaction and the gun's close proximity to the marijuana, "it was permissive for the district court to determine [that the drugs and the gun] were purposefully together and not close in proximity as a matter of coincidence." *See id.*; *United States v. Almeida-Perez*, 549 F.3d 1162, 1173 (8th Cir. 2008) ("[W]here there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.").

**III.**

Next, Bullock argues that the district court erred in departing upward under § 4A1.3 based on conduct of which he was acquitted. First, Bullock argues that it violated his constitutional rights for the district court to rely on prior conduct of which he was acquitted and that was proved only by a preponderance of the evidence. Second, Bullock argues that even if the preponderance of the evidence standard applies, the prior conduct was not established by a preponderance of the evidence. Third, Bullock argues that the district court did not comply with § 4A1.3(c)'s requirement to explain in writing why his "applicable criminal history

category substantially under-represents the seriousness of [his] criminal history or the likelihood that [he] will commit other crimes." Fourth, Bullock argues that the district court clearly erred in finding that the prior conduct and present offense conduct are similar.

"We review the [district] court's decision to depart upward for an abuse of discretion." *United States v. Outlaw*, 720 F.3d 990, 992 (8th Cir. 2013). "The district court's factual findings at sentencing are reviewed for clear error, and the district court's application of the sentencing guidelines to the facts is reviewed *de novo*." *United States v. Finck*, 407 F.3d 908, 913 (8th Cir. 2005). The district court may depart upward "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." § 4A1.3(a)(1). In determining whether to depart, the district court may consider "[p]rior similar adult criminal conduct not resulting in a criminal conviction." § 4A1.3(a)(2)(E). If the district court departs under § 4A1.3(a)(1), it must provide in writing "the specific reasons why the applicable criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." § 4A1.3(c)(1).

None of Bullock's arguments shows that the district court abused its discretion. First, the district court's reliance on acquitted conduct to depart upward did not violate Bullock's Fifth and Sixth Amendment rights. "[W]e have repeatedly held that due process never requires applying more than a preponderance of the evidence standard for finding sentencing facts." *United States v. Martin*, 777 F.3d 984, 997-98 (8th Cir. 2015) (internal quotation marks omitted); *see also United States v. Ruelas-Carbajal*, 933 F.3d 928, 930 (8th Cir. 2019) ("[A]n acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." (internal quotation marks omitted)); *United States v. Haynie*, 8 F.4th 801, 807 (8th Cir. 2021); *United States v. Shavers*, 955 F.3d 685, 699 (8th Cir. 2020).

Second, the Government established by a preponderance of the evidence that Bullock recklessly used a firearm, resulting in serious injury. The Government presented evidence that Bullock was with the victim when the victim was shot, Bullock did not call 911 until after he had dropped the victim off at the hospital, Bullock lied when he said an unknown black male had shot the victim, Bullock admitted that the "gun went off" accidentally, and the victim testified that Bullock accidentally shot him. Additionally, the Government presented two text messages that Bullock sent after his acquittal. In them, he wrote that "[m]y best friend tried to rob me so I shot him in the face" and "my best friend tried to rob my [sic] so I shot [him] in the head." From that evidence, the prior conduct was established by a preponderance of the evidence.

Third, the district court adequately explained "why the applicable criminal history category substantially under-represents the seriousness of [Bullock's] criminal history or the likelihood that [he] will commit other crimes." *See* § 4A1.3(c)(1). "[A] failure to provide written reasons does not automatically require reversal." *Outlaw*, 720 F.3d at 993. In *Outlaw*, "any prejudice from this failure [wa]s nullified when the district court stated with great specificity in open court the reasons for its decision to depart upward." *Id.* (internal quotation marks omitted). Though the district court did not comply with § 4A1.3(c)(1)'s requirement to elaborate in writing why it departed upward, this was harmless error because it thoroughly explained in the sentencing hearing why it departed upward and noted that both the prior conduct and the present incident involved firearms. *See id.*; Fed. R. Crim. P. 52(a).

Fourth, the district court did not clearly err in finding that the acquitted conduct and present offense conduct are similar because both the prior conduct and the present incident involved firearms. *See United States v. Robertson*, 568 F.3d 1203, 1207, 1212-13 (10th Cir. 2009) (concluding under § 4A1.3 that the defendant's charges for criminal discharge of a firearm involved conduct that was sufficiently similar to the instant offense of possession of a firearm by a felon).

Therefore, the district court did not abuse its discretion in departing upward under § 4A1.3.

## IV.

Finally, Bullock argues that his sentence is substantively unreasonable because he cooperated with the police, he is not dangerous, his criminal history consists of only three misdemeanor marijuana-possession convictions, he had custody of his young daughter who had health issues, he had a stable job, and he is at risk of COVID complications due to asthma and hypertension.

We review "the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). The sentence must be "sufficient, but not greater than necessary" to satisfy the purposes in 18 U.S.C. § 3553(a)(2). § 3553(a). The district court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1), "the need for the sentence imposed . . . to reflect the seriousness of the offense," § 3553(a)(2)(A), "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct," § 3553(a)(2)(B), the guidelines sentencing range, § 3553(a)(4), and "any pertinent policy statement," § 3553(a)(5). "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *Feemster*, 572 F.3d at 461 (internal quotation marks omitted). A district court has "wide latitude" in weighing the § 3553(a) sentencing factors. *United States v. Nguyen*, 829 F.3d 907, 925-26 (8th Cir. 2016). Indeed, "it will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *Feemster*, 572 F.3d at 464.

Bullock's sentence is substantively reasonable. At sentencing, the district court said that it considered all the § 3553 factors. The district court also discussed the offense conduct; Bullock's history and characteristics, including his health conditions and role as a father; his criminal history, including the prior conduct of which he was acquitted; the need for deterrence; and other relevant facts. *See* § 3553(a). Though Bullock disagrees with the district court's weighing of the factors, that does not make his sentence substantively unreasonable. *See Nguyen*, 829 F.3d at 925-26.

## V.

For the foregoing reasons, we affirm Bullock's sentence.

_____